**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| George Miller,<br><br>              Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>              Respondents. | No. CV-14-01773-PHX-NVW<br><br>**ORDER** |

      Before the Court is Petitioner George Miller's 2014 Petition for Writ of Habeas Corpus against Respondents Charles Ryan et al. ("the State"). (Doc. 13.) Miller previously filed a petition for habeas corpus in 2009 (Doc. 1, Case No. 09-CV-01739-NVW-MEA), which on September 3, 2009, this Court *sua sponte* and erroneously dismissed without prejudice for failure to exhaust state remedies, as state post-conviction proceedings were still pending (Doc. 5, Case No. 09-CV-01739-NVW-MEA). Two and a half months later, the state court on its own dismissed those post-conviction proceedings as improper and untimely second proceedings. That confirmed that Miller's 2009 petition in this Court had been timely, not premature, and properly filed in this Court. The State did not contribute to this Court's erroneous dismissal but did not inform this Court of its error, which became apparent when the state court dismissed the then-pending proceedings as late and thus not "properly" filed.

      After several other state-court post-conviction proceedings, all dismissed as

untimely and improper under state law, Miller brought this second federal habeas corpus proceeding under 28 U.S.C. § 2254 on August 7, 2014.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On May 14, 2003, a jury found petitioner George Miller guilty on three counts of sexual conduct with a minor, one count of kidnapping, and one count of sexual molestation of a child. (Doc. 1 at 2.) The trial court later sentenced Miller to consecutive aggravated prison terms of 37 years for each sexual conduct offense and 35 years for each of the kidnapping and sexual molestation offenses, all together totalling 181 years. (Doc. 62-2 at 231-32.) Miller appealed his verdict and sentence to the Arizona Court of Appeals. That court laid out the following facts from Miller's trial:

> The offenses took place over a period of several weeks during the 1992-93 school year, while defendant was living in Phoenix with his girlfriend Joyce and her four children, including the victim, her then eight-year-old daughter D.J. The victim testified that, during that period, defendant had sexual intercourse with her on three separate occasions when she had come home from school and they were alone in the house.
>
> The first time it happened, D.J. was either taking a nap or doing homework and defendant had come up behind her and given her a hug. He then ran his hand down her back and proceeded to put her on an ottoman in the living room and take her clothes off. D.J. was "kicking and screaming, trying to get him off" her, but defendant was able to place his penis in her vagina. D.J. testified that she remembered that "[i]t hurt" and that it "was hard to walk" afterward. Later that evening, when she was coming out of the shower, defendant "shoved" her into her room and said "if you tell anyone, I'll kill you." She believed he could follow through on his threat because defendant kept guns at the house.
>
> The scenario was similar the second time. D.J. had come home from school and was on the couch with defendant when he started holding her. D.J. started kicking, screaming, and scratching, and she managed to get away. Unfortunately, she "tripped over something and fell," and defendant was able to seize her and hold her down on the floor. He held her two hands over her head by the wrists and once more inserted his penis in her vagina.

> On the third and last time, D.J. had come home from school and thought that defendant was not there because she did not see his truck in the driveway. She entered the house and began to do her homework when defendant "appeared" and took her to the ottoman again. He again began to take her clothes off; but, this time, as he was doing that, he also told her to "hold this" and placed his penis in her hand. He then had sexual intercourse with her again.
>
> After this third occasion, D.J. . . . began staying nearby at her aunt and uncle's house . . . . She did not reveal the abuse to her mother, but gave her the excuse that her aunt and uncle were helping with her homework.
>
> Defendant lived with the family after the third assault but there were no further incidents. He and Joyce split up in 1997, but he continued to telephone Joyce from time to time at home. When he called to speak with Joyce at her home in March 2002, D.J. either answered the telephone or overheard a message defendant left for Joyce. In either case, D.J. formed the impression that defendant was about to resume his relationship with Joyce, which induced her to reveal to Joyce that he had molested her in the past. . . .
>
> D.J.'s mother reported the matter to police, and a detective associated with the Child Help Center eventually interviewed D.J. about the offenses. The state subsequently filed the present charges, which defendant denied, and the matter was set for trial.
>
> . . .
>
> The state's witnesses at trial consisted of D.J., Joyce, [two others], and Wendy Dutton, the state's expert witness on the characteristic behaviors of child sexual abuse victims. Defendant elected to testify, admitting that he had molested both his daughters when they were eight, but contending that sexual abuse counseling had "cured" him of his attraction to pre-pubescent girls. He flatly denied any inappropriate sexual conduct with D.J.

(Doc. 24-3 at 124-27.)

On direct appeal, Miller argued that the trial court (1) abused its discretion by admitting evidence of Miller's other acts of sexual misconduct under Arizona Rule of Evidence 404(c); (2) committed fundamental error by failing to give the jury Arizona's

standard Rule 404(c) instruction; and (3) abused its discretion in permitting the victim's handwritten statement to come into evidence. (Doc. 24-3 at 2-65). On June 8, 2004, the court of appeals denied relief on all three claims. (Doc. 24-3 at 140.)

After the Arizona Supreme Court summarily denied review (Doc. 24-3 at 156), Miller filed for state post-conviction relief on April 1, 2005 (Doc. 24-3 at 158). He raised two claims: (1) that his trial counsel was ineffective for failing to investigate whether the victim was hypnotized before her trial testimony and (2) that the trial court improperly imposed consecutive aggravated sentences in violation of *Blakely v. Washington*, 542 U.S. 296 (2004). (Doc. 24-4 at 2-25.) The superior court denied his petition. (Doc. 24-4 at 150.) Miller appealed, and both the state court of appeals and the Arizona Supreme Court denied review. (Doc. 24-4 at 184, 201.)

On June 24, 2009, nine months after the Arizona Supreme Court denied review, Miller filed a second post-conviction relief petition in state court. In this one he alleged that (1) the trial court improperly imposed consecutive sentences, (2) the trial court sentenced him in violation of the Constitution's *Ex Post Facto* Clause, (3) his trial lawyer was ineffective for failing to challenge the credentials of the state's expert witness, (4) his Sixth Amendment rights to confrontation and cross-examination were violated, (5) the State failed to properly disclose the subject of its expert testimony, and (6) the Court improperly permitted the State to amend its indictment. (Doc. 24-5 at 2-21.) The state superior court dismissed this petition on November 20, 2009, on two grounds: untimeliness under Arizona Rule of Criminal Procedure 32.4(a), and preclusion under Rule 32.2(a) since the claims were or could have been raised in prior proceedings. (Doc. 24-7 at 3.) That court also rejected his claim for relief based on newly discovered evidence, which the court determined was really just a late challenge to the admissibility and reliability of an expert witness's trial testimony. (*Id.*)

Going back a few months, in August of 2009, within the one-year limit for doing so and while his second but improper proceeding was pending in the state court, Miller had filed a Petition for Writ of Habeas Corpus in federal court under 28 U.S.C. § 2254.

(Doc. 1, Case No. 09-CV-01739-NVW-MEA.) As noted above, on September 3, 2009, this Court *sua sponte* and erroneously dismissed the petition without prejudice, thinking the then-pending state post-conviction relief petition had been properly filed and needed to be exhausted. This Court's dismissal was shown to have been incorrect eleven weeks later when the state court dismissed Miller's second state-court petition as untimely and barred under state procedure.

Over the next few years, Miller filed two more state post-conviction relief petitions, which were dismissed as untimely or otherwise improper. (Doc. 24-8 at 2-3, 38-39.)

On August 7, 2014, Miller filed this second federal court Petition for Writ of Habeas Corpus (Doc. 1), amended on March 27, 2015 (Doc. 13). On June 29, 2015, the State filed a Limited Answer (Doc. 24), which argued that that petition was untimely because Miller filed it long after September 25, 2009, the date on which the one-year statute of limitations imposed by 28 U.S.C. § 2254(d) had run. (Doc. 24 at 10.) The State noted that Miller's second state-court post-conviction relief petition, pending when the September 25, 2009 limitation ran, was itself untimely and not properly filed, and thus did not toll the § 2254(d) deadline, as noted by the state court's dismissal of that petition on November 20, 2009. (*Id.*)

The Limited Answer discussed general principles of equitable tolling. But the State was entirely silent on the timely federal habeas corpus petition filed on August 7, 2009, and erroneously dismissed the following month.

On February 8, 2016, the Magistrate Judge filed a Report and Recommendation ("R&R") recommending that this Petition be dismissed with prejudice as untimely. (Doc. 31.) The R&R did mention that the earlier federal habeas corpus petition had been filed and involuntarily dismissed as premature and that no appeal had been taken. (Doc. 31 at 4-5.) The R&R did not discuss the possibility of equitable tolling from this Court's *sua sponte* erroneous dismissal of Miller's 2009 habeas corpus petition. Miller filed Objections to the R&R (Doc. 37), and the State initially filed no reply. However, this

Court found by order of March 15, 2016, that its earlier dismissal of the 2009 federal petition was in error. (Doc. 38.) The Court called for further briefing on whether that equitably affected Miller's time to file this Petition. (*Id.*) The State's Reply (Doc. 41) was not satisfactory, Miller moved to compel the State to respond more fully (Doc. 42), and the Court ordered the State to address seven more specific questions (Doc. 43). The State did respond. (Doc. 46.)

Accordingly, the Court ordered the State to respond to the merits of Miller's original 2009 habeas petition and afforded Miller a chance to reply. (Doc. 56 at 2.) The State responded on January 30, 2017 (Doc. 62), and Miller replied on February 21, 2017 (Doc. 68). The Court did not formally reopen the 2009 case.

## II. LEGAL STANDARDS

### A. The Court's Equitable Power

A district court may exercise its equitable powers to correct its own previous errors. *See Anthony v. Cambra*, 236 F.3d 568, 574 (9th Cir. 2000) (permitting district court to use equitable power and deem second habeas petition to "relate back" to first *nunc pro tunc* where first was dismissed erroneously); *Calderon v. United States Dist. Ct. (Kelly)*, 163 F.3d 530, 540 (9th Cir. 1998) (en banc), *abrogated on other grounds by Woodford v. Garceau*, 538 U.S. 202 (2003) (same). This is true even in habeas cases "if the court is acting on its own initiative, rather than upon the application filed by the petitioner." *United States v. Williams*, 790 F.3d 1059, 1073 (10th Cir. 2015), *cert denied*, 136 S. Ct. 604 (2015).

However, before taking any other action, a court may first assess whether its initial error was harmless. *See* Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."). Erroneous dismissal of a habeas petition is harmless where the petitioner would have not been granted relief even if the petition had been fully considered. The Court will thus begin by assessing whether Miller's original petition would have warranted relief had it been properly considered.

**B. Habeas Corpus Relief**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal habeas will not lie on claims decided on the merits by a state court unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Questions of state law may not be reviewed in a federal habeas proceeding. *Hayes v. Ayers*, 632 F.3d 500, 517 (9th Cir. 2011) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). Additionally, a petitioner must "exhaust[] available state remedies as to any of his federal claims." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

## III. ANALYSIS

This Court erred on September 3, 2009, when it dismissed Miller's first federal habeas corpus petition. Miller had no fault in that. This is grounds for equitable tolling at least to put Miller back where he was entitled to be before that erroneous dismissal. Therefore, the Court examines Miller's original petition to see if he was prejudiced by the erroneous dismissal. In effect, this Court decides those merits now under the rubric of deciding whether the prejudice prong of equitable tolling is met in this case. There was no prejudice on those merits.

Miller's original 2009 petition raised five grounds for habeas relief: (1) the state trial court's improper admission of evidence under Arizona Rule of Evidence 404, (2) the trial court's failure to properly instruct the jury on Rule 404(c), (3) the trial court's erroneous admission of a handwritten statement by the victim over hearsay objections, (4) ineffective assistance of trial counsel for failure to investigate whether a witness was hypnotized before trial, and (5) the imposition of an aggravated sentence in violation of *Blakely v. Washington*. (Doc. 1, Case No. 09-CV-01739-NVW-MEA.)

Claims (1) through (3) presented questions of state law that were not eligible for federal habeas relief. *See Hayes*, 632 F.3d at 517. In addition, these three claims were procedurally defaulted because Miller did not raise them on direct appeal and could not and did not raise them on state post-conviction review, let alone as federal issues. *See Coleman*, 501 U.S. at 731. Only claims (4) and (5) were federal claims potentially reviewable in this tribunal.

**A. Claim (4): Ineffective Assistance of Counsel**

Miller argues his trial counsel was constitutionally ineffective for failing to investigate whether victim D.J., one of the witnesses who testified against him, was hypnotized before trial. (Doc. 1, Case No. 09-CV-01739-NVW-MEA, at 27.)

Ineffective assistance of counsel is measured by the two-prong test in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel must have performed deficiently, and this performance must have prejudiced the defendant. *Id.* An attorney's performance is constitutionally deficient if it "fell below an objective standard of reasonableness." *Id.* at 688. The defendant must "overcome the strong presumption that counsel's performance was within the wide range of reasonable professional assistance and might be considered sound trial strategy." *Carrera v. Ayers*, 670 F.3d 938, 943 (9th Cir. 2011) (internal quotation marks omitted). To prove prejudice, a defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. He need not show this with certainty, but merely with "a probability sufficient to undermine confidence in the outcome." *Id.*

In denying Miller's ineffectiveness claim, the state courts rendered a decision that was neither contrary to nor an unreasonable application of clearly established law. Likewise, it was not based on an unreasonable determination of the facts. Miller defends his claim by arguing that (1) D.J reported being raped by him ten years after the fact, "suggesting that [the allegations] could have been triggered during a hypnosis session"; (2) D.J. was seeing a counselor leading up to trial, "a setting in which hypnotherapy

commonly is employed"; and (3) D.J.'s trial testimony "reflects an inability to distinguish remembered events from 'DREAMS' or 'NIGHTMARES,' which may be indicative of hypnotic recall." (Doc. 1 at 29.) Miller's trial counsel did not fall below the *Strickland* threshold. There was no basis to investigate pre-trial hypnosis, just Miller's wild speculation. In addition, Miller has not shown a reasonable probability that investigation into these claims would have rendered a different outcome in his case. He has thus fallen well short of showing both deficient performance and prejudice under *Strickland*. It was neither contrary to nor an unreasonable application of settled federal law for the state courts to deny Miller's claim of ineffectiveness.

**B. Claim (5): Aggravated Sentence**

Miller argues that in considering his prior felony conviction to enhance his sentence, the trial court violated his constitutional right announced in *Blakely v. Washington*, 542 U.S. 296 (2004), to "have a jury determine all facts used to aggravate [his] sentence." (Doc. 1 at 33.) The Supreme Court in *Blakely*, however, held that the Sixth Amendment right to trial by jury prohibits a judge from imposing a sentence beyond the statutory maximum based on supporting facts neither found by a jury nor admitted by the defendant. *Blakely*, 542 U.S. at 303. That holding stemmed from the Court's earlier decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which held, "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490 (emphasis added).

Miller's sentencing enhancement was predicated on a prior felony conviction, but Miller himself admitted to the prior felony on the record. (Doc. 2-1 at 53-54.) No impermissible facts crept into the sentencing court's consideration. (Doc. 2-1 at 61-62.) In denying him relief, the state courts rendered a decision neither contrary to nor an unreasonable application of settled federal law. No habeas relief is warranted for this claim.

**C. Harmless Error**

This Court's error in dismissing Miller's 2009 petition as untimely was therefore harmless. Since that petition properly would have been denied on the merits, the Court adopts the reasoning set forth in the Report and Recommendation (Doc. 31) as to why Miller's 2014 petition should be dismissed with prejudice as untimely.

In summary, this decision is pragmatic but procedurally serpentine. While Miller has shown basis for equitable tolling in this Court's erroneous dismissal of his earlier, timely petition, he must also show he was prejudiced in order to obtain relief. The Court looks back to his earlier timely petition and considers it on its merits to discover whether he was prejudiced by the erroneous dismissal. This Court finds that all those claims lacked merit and would have been dismissed anyway. Therefore, there was no prejudice. This Court does not "reopen" the 2009 case but merely looks to it. Without equitable tolling, dismissal of this 2014 Petition is required for the reasons stated in the R&R. Judgment will be entered dismissing this Petition with prejudice.

IT IS THEREFORE ORDERED that the Report and Recommendation (Doc. 31) is adopted except to the extent stated otherwise in this order.

IT IS FURTHER ORDERED that the Clerk of the Court enter judgment dismissing this Petition (Doc. 1) with prejudice.

The Clerk shall terminate this case.

The request for a certificate of appealability is denied because appellant has not shown that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v.*

*/ / /*
*/ / /*
*/ / /*

*McDaniel*, 529 U.S. 473, 484 (2000); see also 28 U.S.C. § 2253(c)(2); *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Dated this 14th day of April, 2017.

_____
Neil V. Wake
Senior United States District Judge